**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PIPELINE SUPPLY & SERVICE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-3719 |
| | § | |
| RUSSELL NEWMAN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

The plaintiff, Pipeline Supply & Service, LLC, sued a former employee, Russell Newman, for anticipatory breach of contract. (Docket Entry No. 1-5). Newman filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue. (Docket Entry No. 5). He also filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). (Docket Entry No. 7). The court treated the motion to dismiss as one for summary judgment and allowed additional submissions. (Docket Entry No. 15). Based on the motions, the record, and the applicable law, the court denies the motion to dismiss for lack of personal jurisdiction and grants the motion for summary judgment. The reasons for this ruling are below.

## I.     Background

Pipeline Supply hired Newman in February 2018. (Docket Entry No. 7-1 ¶ 5). Newman is from Louisiana, has lived at the same address in Louisiana since 2004, and has never owned property in Texas. (*Id.* ¶¶ 2–4). Turner Industries, which is headquartered in Louisiana, has been a customer of Newman's since at least 2002. (*Id.* ¶¶ 7, 8). Newman alleges that Pipeline Supply hired him because of his preexisting relationship with Turner. (*Id.* ¶ 6). Newman's main point of contact at Turner "was and is" located at Turner's headquarters in Baton Rouge, Louisiana. (*Id.*

¶ 8).  Newman alleges that he negotiated and signed his employment contract with Pipeline Supply in Louisiana; that throughout his employment, he worked out of the Louisiana Pipeline Supply branch office located in St. Gabriel, Louisiana; and that he submitted his notice of resignation from Louisiana.  Newman now works for Allredi, a Texas company, in Louisiana. (*Id.* ¶ 10–13).

As a condition of his employment with Pipeline Supply, Newman executed the "Pipeline Supply & Service, LLC Proprietary Information Agreement."  (Docket Entry No. 1-5 ¶ 5.3).  The Agreement contains—in Pipeline Supply's own words—"restrictive covenants, namely a non-solicitation provision, prohibiting certain post-employment competitive activity following termination of Newman's employment with" Pipeline Supply.  (*Id.*).  The relevant provision, Section 5, reads as follows:

**Section 5.  <u>OTHER ACTIVITIES; CONFLICTS OF INTEREST.</u>**

**5.1    Non-Solicitation**.    In consideration of the Company's promise to provide Proprietary Information to me, and so as to enforce my agreement regarding such Proprietary Information contained in ***Section 3*** above, I agree that while employed by the Company and for a period of one year after the termination of my employment with the Company for any reason, I will not, directly or indirectly, for my benefit or for the benefit of another, without the Company's prior written consent:

[ . . .]

(b) solicit or encourage any existing, former or prospective customer or supplier of the Company with whom I had contact as an employee of the Company or about whom I had Proprietary Information, or use any Proprietary Information to solicit or encourage any existing, former or prospective customer or supplier of the Company, to terminate its relationship with the Company or become a customer or supplier of another entity if such other entity offers products or services which are or may be competitive with those offered by the Company [ . . .]

(Docket Entry No. 7-2 at 4).

The Agreement also contains a choice-of-law and venue provision.  The provision reads as follows:

**Section 9.  MISCELLANEOUS**

9.3     Any dispute in the meaning, effect, or validity of this Agreement will be resolved in accordance only with the laws of the State of Texas without regard to the conflict of laws provisions of the State of Texas.  I agree that venue for litigation involving the enforcement of this Agreement or any rights, duties, or obligations under this Agreement, whether brought by me or the Company, shall be in Texas state court in Houston, Texas, or in a United States District Court located in Houston, Texas, and I expressly consent to the exclusive jurisdiction of such courts.

(*Id.* at 6).

On July 1, 2025, Newman submitted his notice of resignation.  (Docket Entry No. 5-1 ¶ 13).  Two days later, he talked to Clay Meredith, Pipeline Supply's Vice President of Sales and Operations.  (*Id.*).  Pipeline Supply's complaint alleges that Newman "met" with Meredith, (Docket Entry No. 1-5 ¶ 5.7), but Newman clarifies in his declaration that this meeting was actually a phone call that he participated in from his home in Louisiana.  (Docket Entry No. 5-1 ¶ 14).  Pipeline Supply alleges that during the meeting, Meredith reminded Newman of the terms of the Agreement, including the one-year non-solicitation provision.  (Docket Entry No. 1-5 ¶ 5.7).  Pipeline Supply alleges that Newman then stated, "I will make sure that Turner doesn't buy another f***ing thing from [Pipeline Supply] and you will get stuck with all the inventory."  (*Id.* ¶ 5.8).

Pipeline Supply sued Newman in state court for anticipatory breach of contract, for a temporary restraining order, and for a permanent injunction.  (Docket Entry Nos. 1-5, 1-7).  The state court denied Pipeline Supply's motion for a temporary restraining order.  (Docket Entry No. 1 ¶ 3; Docket Entry No. 1-8).  Newman removed to this court.  (Docket Entry No. 1).  He then filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, motion to transfer venue, (Docket Entry No, 5), and a motion to dismiss under Rule 12(b)(6), (Docket Entry No. 7).  At an initial conference, this court heard oral argument on whether Texas or Louisiana law applied.  (Docket Entry No. 15).  The court stated that it would treat the motion to dismiss as a motion for summary judgment and allowed the parties to file additional submissions.  (*Id.*).

3

II.    **Analysis**

A. **The Motion to Dismiss or in the Alternative, the Motion to Transfer Venue**

The first of Newman's two pending motions is his motion to dismiss for lack of personal jurisdiction or in the alternative, motion to transfer venue. (Docket Entry No. 5). He argues that the forum-selection clause in the Agreement does not establish personal jurisdiction over him in a Texas court because that provision applies only to litigation to enforce the Agreement or the rights, duties, or obligations under the Agreement, and this case does not fall into either category. (*Id.* at 9). He argues that without the forum-selection clause, he is not subject to either general or specific personal jurisdiction in Texas because he is a Louisiana resident and the case arises from actions taken in Louisiana. (*See generally id.*).

"Personal jurisdiction can be waived by an enforceable forum selection clause in which the parties consent to personal jurisdiction in a specific forum." *Bar Grp., LLC v. Business Intelligence Advisors, Inc.*, 215 F. Supp. 3d 524, 538 (S.D. Tex. 2017) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985)). In the Fifth Circuit, "even in diversity cases, federal law governs the 'enforceability' of forum-selection clauses." *Barnett v. DunCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016). A forum-selection clause is prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable. *See Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996). "The party resisting enforcement . . . bears a 'heavy burden of proof.'" *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)). While "the enforceability of a forum selection clause in a diversity case ... is governed by federal law, the clause's interpretation is governed by the law of the forum state." *Dynamic CRM Recruiting Sols., LLC v. UMA Educ., Inc.*, 31 F.4th 914, 917–18 (5th Cir. 2022).

4

In his motion, Newman challenges only the interpretation of the forum-selection clause, not its enforceability. For the reasons explained below, the court concludes that Louisiana law applies. But under either Texas or Louisiana law, the forum-selection clause covers the parties' dispute. First, the forum-selection clause requires that disputes within its scope be brought only in a federal or state court in Houston, Texas. *See PCL Civil Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020) ("Under Louisiana law, the word 'shall' is routinely construed as mandatory."); *Semiconductor Glob. Sols. v. Capital Asset Exchange & Trading, LLC*, 782 F. Supp. 3d 458, 467 (W.D. Tex. 2025) ("[U]nder Texas law, 'shall' is a mandatory term.").

Second, the litigation falls within the scope of this mandatory clause. "To determine whether the forum-selection clause applies to the type of claims asserted in the lawsuit, courts 'look to the language of the parties' contract to determine which causes of action are governed by the forum-selection clause. . . .'" *Semiconductor Glob. Sols.*, 782 F. Supp. at 468 (quoting *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998)). "If the substance of the plaintiff's claims, stripped of their labels, does not fall within the scope of the forum-selection clause, the clause cannot apply." *Id.* (quoting *Marinechance Shipping Ltd.*, 143 F.3d at 222).

This case involves an anticipatory breach of contract claim based on Newman's alleged intent to violate the Agreement's non-solicitation provision. Newman's primary argument is that because Pipeline Supply could not obtain a temporary restraining order, it will not be able to obtain a preliminary injunction, and so damages are the sole issue before the court, and damages are not a "right" under the contract. (Docket Entry No. 5 at 10). Newman argues that "there is no clause in the subject contract that states [that Pipeline Supply] is entitled to payment for a breach or threatened breach of contract." (*Id.*). But that argument ignores the plain language of the

Agreement, which clarifies that for any "threatened" breach of a covenant in the Agreement, Pipeline Supply shall be entitled to injunctive relief in *addition* to damages or other remedies. (Docket Entry No. 7-2 ¶ 9.4).

Newman's duty not to solicit Turner "would not exist but for the contract"; Pipeline Supply's "action for breach of those duties constitutes an action to enforce the agreement." *See Int'l Mezzo Techs., Inc. v. Airbonre ECS, LLC*, No. 23-01620-BAJ-RLB, 2024 WL 4524165, at *4 (M.D. La. Aug. 23, 2024) (construing a forum-selection clause providing that "[a]ny action to enforce [the NDA] must be brought in the federal or state courts sitting in" a certain county as covering a breach of contract claim based on violation of the NDA). While the phrase "litigation involving" the "enforcement" of the agreement or the "rights, duties, and obligations" under the agreement is admittedly narrower than "any dispute" or "any action," which are common formulations of forum selection clauses, the court easily concludes that this suit—which, at a minimum, involves Newman's contractual duty not to solicit Pipeline Supply—falls well within the scope of the forum-selection clause at issue. Louisiana courts have even interpreted tort claims as falling within a forum selection clause requiring "[v]enue of any suit, right or cause of action arising under or in connection with" each contract to "lie exclusively in Harris County, Houston, Texas." *Universal Servs. & Assocs., LLC v. Grundmeyer*, 2022-0427, p. 8 (La. App. 4 Cir. 1/26/23), 382 So.3d 115, 120; *see also In re Bloom Bus. Jets, LLC*, 522 S.W.3d 764, 769–70 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (examining the phrase "litigation involving" in a forum selection clause and determining that under the ordinary meaning of that phrase, even claims beyond breach of contract claims were covered by the clause).

Newman challenged only the interpretation of the forum-selection clause, not its enforceability. The clause is enforceable. *See Flowbee Int'l, Inc. v. Google, Inc.*, Civ. Action No.

C-09-199, 2010 WL 11646901, at *7 (S.D. Tex. 2010) ("Here, Plaintiff disputes only the scope of the forum selection clause, not its enforceability. The forum selection clause is thus enforceable."); *Int'l Mezzo Techs., Inc.*, 2024 WL 4524165, at *3 ("Mezzo has failed to argue that the clause is unreasonable, and therefore has not overcome the presumption of enforceability. As such, the clause is enforceable."). Because the forum-selection clause covers the scope of this dispute, is enforceable, and waives objections to the lack of personal jurisdiction, the court concludes that it has personal jurisdiction over Newman. *See Bar Grp., LLC*, 215 F. Supp. at 538.

The court denies the motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer the case.[1]

### B. The Motion for Summary Judgment

Newman also moved to dismiss for failure to state a claim under Rule 12(b)(6). (Docket Entry No. 7). The court considered the motion as one for summary judgment and allowed the parties to file additional submissions. (Docket Entry Nos. 15, 16, 17). Newman argues that Texas choice-of-law rules require the application of Louisiana law and that under Louisiana law, the non-solicitation clause contained in the Agreement is null and void. (Docket Entry No. 7). In response, Pipeline Supply does not directly dispute that this non-solicitation provision is invalid under Louisiana law but argues that Texas law applies because the Agreement stated that Texas law would apply "without regard to the conflict of law provisions of the State of Texas." (Docket Entry No. 16 at 2) (emphasis omitted). Pipeline Supply alternatively argues that Texas law applies even under Texas choice-of-law rules. (*Id.* at 4).

---

[1] Newman asks the court to transfer the case "only in the event that the Court should find that there are sufficient contacts with Texas to retain jurisdiction over" him. (Docket Entry No. 5 at 10). The court concludes that Newman has waived the lack of personal jurisdiction by this Texas court and so does not consider this alternative request.

The Fifth Circuit and Texas courts have long expressed more skepticism toward choice-of-law clauses than forum-selection clauses. "Unlike arbitration and forum selection clauses, which dictate where a dispute will be heard, choice-of-law provisions dictate the law that will decide the dispute, and thus create more tension with a state's power to regulate conduct within its borders." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 580 (5th Cir. 2015). The Texas Supreme Court has held that "the parties' freedom to choose what jurisdiction's law will apply to their agreement cannot be unlimited" and that "they cannot by agreement thwart or offend the public policy of the state the law of which otherwise ought to apply." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990). "[U]nreasonable restraints of trade, including unreasonable covenants not to compete, contravene public policy." *Id.* at 680. "Thus, although Texas courts permit choice-of-law agreements and the default position is that they are enforceable, it is not uncommon for parties to overcome them." *Cardoni*, 805 F.3d at 581.

Pipeline Supply argues that the court should not undertake a choice-of-law analysis because the Agreement stated that Texas law applies without regard to choice-of-law rules. But Fifth Circuit caselaw holds that such language is not dispositive of the issue. In *Realogy Holdings Corp. v. Jongebloed*, the plaintiff had signed a contract stating that "[t]he laws of the State of Delaware shall govern [its] interpretation . . . regardless of the law that might be applied under principles of conflicts of laws." 957 F.3d 523, 527 (5th Cir. 2020) (alteration in original). At issue were restrictive covenants in an employment agreement, including a noncompete. The Fifth Circuit held that the district court erred by refusing to consider the plaintiff's argument that Texas law applied and by instead applying Delaware law because the contract "sa[id] so." *Id.* at 532. The Fifth Circuit stated that "under a proper conflicts-of-law analysis, Texas law should apply"; the district court had "failed to conduct a proper conflicts-of-law analysis." *Id.* The Fifth Circuit

8

found that the district court had "failed to acknowledge" that while Texas law recognizes that parties can agree to be governed by the law of another state, "contractual choice of law provisions are not 'unassailable' under Texas law." *Id.* (quoting *Cardoni*, 805 F.3d at 580).

Pipeline Supply's reliance on *TWC Aviation, Inc. v. World Tech Aviation, LLC*, 714 S.W.3d 688, 703 (Tex. App.—Houston [1st Dist.] 2024, no pet.), is unavailing because that case is in line with *Realogy*, *DeSantis*, and other cases holding that parties cannot contract out of choice-of-law issues involving "unreasonable restraints of trade."  In *TWC Aviation*, the Court of Appeals did not undertake a choice of law analysis in part because the parties had "expressly agreed that their relationship would be governed by Texas law 'without giving effect to its conflict of laws provisions.'" 714 S.W.3d at 703.  The Court of Appeals noted that there was "no reason to question the enforceability of the provision of the parties' provision," because in Texas, "parties 'have the right to contract as they see fit *as long as their agreement does not violate the law or public policy*.'" 714 S.W.3d at 703 (emphasis added).  The contract did not implicate either the law or public policy; the case concerned fraudulent liens, and the plaintiff argued only that Texas law should not apply because there was no "nexus" between Texas and the parties' relationship.  *Id.*

In contrast, this case concerns a non-solicitation provision implicating "unreasonable restraints of trade" that the Texas Supreme Court has concluded are not "unassailable." *DeSantis*, 793 S.W.2d at 680.  Because the freedom to contract is not "unlimited" and because—as detailed further below—the non-solicitation provision is against Louisiana's public policy, the court must proceed to the choice of law analysis.

"To render a choice-of-law provision unenforceable, a party must satisfy the standards in Section 187(2) of the Restatement (Second) of Conflict of Laws." *Cardoni*, 805 F.3d at 581.  The Restatement provides that:

9

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement § 187(2).

Because the Agreement "unambiguously mandates that Texas law applies, . . . Louisiana law cannot override the [Agreement] unless (1) it has a 'more significant relationship with the parties and transaction than Texas does'; (2) it has a 'materially greater interest than Texas in applying its law to this set of facts'; and (3) 'applying Texas law [would] be contrary to a fundamental policy of' Louisiana." *Anadarko Petrol. Corp. v. Alternative Environmental Solutions, Inc.*, --- F.4th ----, No. 25-20059, 2026 WL 590148, at *2 (5th Cir. Mar. 3, 2026) (quoting *Cannon Oil & Gas Servs., Inc. v. KLX Energy Servs., L.L.C.*, 20 F.4th 184, 189 (5th Cir. 2021)). "[T]he Restatement section 187(2)(b) analysis is better taken in reverse to answer whether, absent the choice-of-law provision, Louisiana law would apply." *Bruckner Truck Sales, Inc. v. Bayou Diesel Servs., LLC*, No. 2:17-CV-0204, 2017 WL 10152283, at *6 (N.D. Tex. Nov. 21, 2017), *report and recommendation adopted,* 2018 WL 4076478 (N.D. Tex. Jan. 5, 2018).

Louisiana has a more significant relationship to the parties and transaction than does Texas. "To determine which state has a more significant relationship, court consider multiple contacts, including the place of contracting, the place of negotiation, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Anadarko Petrol. Corp.*, 2026 WL 590148, at *2. "These contacts are weighed 'not by their number, but by their quality.'" *Cardoni*, 805

10

F.3d at 582–83 (quoting *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996). "Because this initial inquiry assesses whether [Louisiana] law would apply in the absence of the parties' choice-of-law agreement, the 'more significant relationship' test does not take account of the parties' expectation that Texas law would apply." *Id.* (quoting *Exxon Mobil Corp. v. Drennan*, 541 S.W.2d 319, 325–26 (Tex. 2014)).

In this case, "although some of the contacts favor Texas, the greater contacts—both in number and quality—favor" Louisiana. *Cardoni*, 805 F.3d at 583. Newman signed the Agreement in Louisiana. Pipeline Supply states that its standard business practice is for its Houston-based HR representative to sign an agreement like the one at issue only after the employee signs it and returns it to HR in Texas. (Docket Entry No. 16-1 ¶ 5). That makes Texas the place of contracting. *Cardoni*, 805 F.3d at 583. In addition, although Newman points out that Pipeline Supply is a Delaware LLC, he does not directly dispute that Pipeline Supply's principal place of business is in Texas. (Docket Entry No. 17 at 10).

The location of Pipeline Supply's principal place of business, however, is "cancelled out" by Newman's residence in Louisiana. *Cardoni*, 805 F.3d at 583. While Pipeline Supply argues that "there is no evidence that any contract negotiations with regard to this Agreement took place outside of Texas," (Docket Entry No. 16 at 6), that overlooks—and fails to rebut—Newman's declaration, in which he states that he negotiated his employment agreement at a TJ Ribs restaurant in Baton Rouge, Louisiana, (Docket Entry No. 7-1 ¶ 11). Nor does Pipeline Supply dispute Newman's assertions that Turner is headquartered in Louisiana and that Newman's main point of contact with Turner was and is located in Louisiana.[2] (*Id.* ¶ 8). That factor also weighs in favor

---

[2] At most, Pipeline Supply asserts instead that Turner has "multiple locations in Texas." (Docket Entry No. 6-2 ¶ 2).

11

of applying Louisiana law. *See Cardoni*, 805 F.3d at 583 (noting that while the plaintiff "did handle six Texas accounts and managed the energy lending group in Dallas, . . . far more of his and the other bankers' customers were non-Texans, including Oklahomans").

Newman's office during his time with Pipeline Supply was in Louisiana. (Docket Entry No. 7-1 ¶ 12). In a declaration, Clay Meredith, Pipeline Supply's Vice President of Sales and Operations, asserts that during Newman's 6.5 years with Pipeline Supply, Newman traveled to Texas every 30 to 45 days to meet with Turner representatives and employees and that Newman spent one to two days in Texas on each trip. (Docket Entry No. 6-2 ¶ 3). That is insufficient to give Texas a greater connection to the case than Louisiana, given Newman's otherwise unrebutted assertion that he did most of his work for Pipeline Supply in Louisiana. The court concludes that between Texas and Louisiana, it is Louisiana that has the more significant relationship to this case. *See also Bruckner Truck Sales, Inc.*, 2017 WL 10152283, at *6.

Second, Louisiana has a materially greater interest in this dispute. "On the Texas side of the equation are the widely recognized interest in enforcing parties' contractual obligations and Texas's interest in enforcing an agreement made by a company based in the state." *Cardoni*, 805 F.3d at 584. Pipeline Supply also points out that Allredi, Newman's new employer, is a Texas company. (Docket Entry No. 16-2). On the other side of the equation are Louisiana's interest in Newman as a resident; Newman's unrebutted assertion that he is working for Allredi's Louisiana office, (Docket Entry No. 7-1 ¶ 15); and the fact that Turner is headquartered in Louisiana. *See Bruckner Truck Sales, Inc.*, 2017 WL 10152283, at *6 ("Louisiana has an interest in its resident employee, as well as a dealership . . . operating in its borders, with Louisiana employees and customers. Louisiana also has an interest in the new business . . . and its employees and customers.").

The final issue is whether applying Texas choice-of-law would contravene a fundamental policy of Louisiana. *Id*. "While the fundamental policy analysis can be somewhat elusive in certain cases, Louisiana has a clear policy against covenants not to compete and covenants not-to-solicit customers." *Id*. While "Texas will allow certain restrictive covenants so long as they have reasonable limitations," Louisiana "takes a dim view on those trying to restrain business within its borders." *Id.* at \*6–7. The Louisiana Supreme Court has stated that "'Louisiana has a strong public policy disfavoring' non-compete and non-solicit restrictive covenants" which is "based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." *Innovative Manpower Sols., LLC v. Ironman Staffing, LLC*, 929 F. Supp. 2d 597, 617 (W.D. La. 2013) (quoting *SWAT 24 Shreveport Bossier, Inc. v. Bond,* 2000–1695 (La.6/29/01), 808 So.2d 294, 298)). As discussed below, Louisiana has banned non-solicitation provisions absent narrow exceptions. *See* LA. R.S. § 23:921(A)–(C). The court concludes that applying Texas law, which is more permissive toward the type of non-solicitation provision at issue here than Louisiana law, would violate Louisiana's public policy.

Under this choice-of-law analysis, the court concludes that Louisiana law applies. And under Louisiana law, the non-solicitation provision in the parties' Agreement is unenforceable. Louisiana law states that "[e]very contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void" except that:

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer

13

carries on a like business therein, not to exceed a period of two years from termination of employment.

La. R.S. § 23.921(A), (C).

As Newman argues, the non-solicitation provision in the Agreement "fails at the threshold." (Docket Entry No. 7 at 8).  The provision does not specify any parish, municipality, or geographic boundary, or otherwise provide a geographic limitation.  That alone makes it "null and void."  *H.B. Rentals, LC v. Bledsoe*, 24 So.3d 260, 263 (La. App. 3d Cir. 2008) ("The total lack of any reference to geographic limits to the non-solicitation agreement renders it null and void."); *Total Safety U.S., Inc. v. Code Red Safety & Rental, LLC*, 423 F. Supp. 3d 309, 314 (E.D. La. 2019) ("Because the non-solicitation provision fails to 'specif[y]' any 'parish or parishes, municipality or municipalities, or parts thereof,' it does not meet the unequivocal exception set out in Louisiana Revised Statute 23:921(C) and is void under Louisiana Revised Statute 23:921(A)(1).").

The court cannot rewrite the non-solicitation provision for the parties.  "If the provision fails to specify any valid geographical area, . . . it cannot be reformed [for that would involve] rewriting a disfavored contract into compliance with a narrowly drawn statutory exception." *Diamond v. Shelton Servs., Inc.*, 713 F. Supp. 3d 257, 265 (E.D. La. 2024) (quoting *Total Safety U.S., Inc.*, 423 F. Supp. 3d at 314 (alteration in original)); *Vartech Sys., Inc. v. Hayden*, 2005-2499 (La. App. 1 Cir. 12/20/06), 951 So. 2d 247, 263 ("While geographical limits may be inferred from the limits of the non-compete clauses in the non-competition agreements, we decline to reform the non-solicitation clauses pursuant to the savings clauses in favor of VarTech"); *Bruckner Truck Sales*, 2017 WL 10152283, at *10–11 (recommending the denial of a temporary restraining order related to the non-solicitation clause because the court could not "rewrite[]" the provision to include geographical limitations).

14

Because the non-solicitation provision does not comply with Louisiana's statutory requirements and cannot be reformed, it is unenforceable. The court grants summary judgment to Newman.

## III.   Conclusion

The court denies the motion to dismiss for lack of personal jurisdiction or in the alternative, motion to transfer venue. (Docket Entry No. 5). The court grants the motion for summary judgment. (Docket Entry No. 7). Final judgment is entered by separate order.

SIGNED on March 9, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge